IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN BRIDAL AND PROM INDUSTRY ASSOCIATION, INC., ALLURE BRIDALS, INC., ALYCE DESIGNS, INC., JOVANI FASHION, LTD., LA FEMME BOUTIQUE, INC., MON CHERI BRIDALS, LLC, MORI LEE, LLC, NEXT CENTURY PRODUCTIONS, INC. d/b/a "SYDNEY'S CLOSET, and PROMGIRL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" and JOHN DOES 1-100,<br><br>Defendants. | Case No. 1:16-cv-00023 |

## **COMPLAINT**

Plaintiffs, American Bridal and Prom Industry Association, Inc., Allure Bridals, Inc., Alyce Designs, Inc., Jovani Fashion, Ltd., La Femme Boutique, Inc., Mon Cheri Bridals, LLC, Mori Lee, LLC, Next Century Productions, Inc. d/b/a "Sydney's Closet", and Promgirl, LLC (collectively "Plaintiffs"), hereby sue Defendants, The Partnerships and Unincorporated Associations Identified on Schedule "A" and John Does 1-100 (collectively "Defendants"), and allege as follows:

### PARTIES

1.      Plaintiff, American Bridal & Prom Industry Association, Inc. ("ABPIA"), is a not for profit corporation organized under New Jersey law. ABPIA maintains its principal place of business at 1018 Whitehead Road Extension, Trenton, New Jersey 08638. ABPIA is organized

exclusively as a business league or trade association for the formalwear industry within the meaning of Section 501(c)(6) of the Internal Revenue Code of 1986. The purposes of ABPIA are as follows:

- to take any and all appropriate and lawful action against the marketing and sale of counterfeit formalwear products;

- to educate consumers, retailers and members of the formal industry and the general public about the harm to consumers and fair competition in the formalwear industry caused by the marketing and sale of counterfeit products;

- to lobby governmental entities to aid the formalwear industry in the fight against the marketing and sale of counterfeit products; and

- to conduct discussions among members of the formalwear industry respecting best practices to combat the marketing and sale of counterfeit products.

2.      Plaintiff, Allure Bridals, Inc., is a Tennessee corporation that maintains its principal place of business at 8415 Wolf Lake Drive, Bartlett, Tennessee 38133.

3.      Plaintiff, Alyce Designs, Inc., is an Illinois corporation that maintains its principal place of business at 7901 N. Caldwell Avenue, Morton Grove, Illinois 60053.

4.      Plaintiff, Jovani Fashion, Ltd., is a New York corporation that maintains its principal place of business at 1370 Broadway, 4th Floor, New York, New York 10018.

5.      Plaintiff, La Femme Boutique, Inc., is a California corporation that maintains its principal place of business at 1312 Santee Street, Los Angeles, California 90015.

6.      Plaintiff, Mon Cheri Bridals, LLC, is a New Jersey limited liability company that maintains its principal place of business at 1018 Whitehead Road Extension, Trenton, New Jersey 08638.

7.     Plaintiff, Mori Lee, LLC, is a Delaware limited liability company that maintains its principal place of business at 3155 S.W. 10th Street, Suite 6A1, Deerfield Beach, Florida 33442.

8.     Plaintiff, Next Century Productions, Inc. d/b/a "Sydney's Closet", is a Missouri corporation that maintains its principal place of business at 11840 Dorsett Road, Maryland Heights, Missouri 63043.

9.     Plaintiff, Promgirl, LLC, is a Delaware limited liability company that maintains its principal place of business at 105 Sleepy Hollow Drive, Suite C, Middletown, Delaware 19709.

10.     Defendants identified on Schedule "A" are all individuals and unincorporated business associations who, upon information and belief, reside in foreign jurisdictions.  The true names and addresses of Defendants are currently unknown.

11.     Defendants conduct their illegal operations through fully interactive commercial websites registered with registrars in the United States and other foreign jurisdictions (hereinafter "Infringing Websites").  Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiffs' intellectual property rights (hereinafter "Counterfeit Products") to consumers within the United States, including the State of Illinois and this Judicial District.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

12.     Through their operation of the Infringing Websites, Defendants are directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged herein, often times as partners, co-conspirators and/or suppliers.  Upon information and belief,

Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. The individual, partnership or unincorporated association names used by Defendants are set forth on Schedule "A" hereto.

13. Defendants, John Does 1-100, are either engaging in the same or similar conduct alleged in this Complaint, or are acting in conjunction with the other named Defendants. The identities of these Defendants are presently unknown. If their identities become known, Plaintiffs will promptly amend this Complaint to identify them.

<u>JURISDICTION AND VENUE</u>

14. Plaintiffs bring this action against Defendants for trademark counterfeiting and trademark infringement, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), Anti-Cybersquatting Consumer Protection Act, Pub. L. No. 106-113 (November 29, 1999), and copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, *et*

*seq.* Plaintiffs also bring this action for uniform deceptive trade practices under the laws of the State of Illinois.

15.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.

16.     This Court has, within its discretion, jurisdiction over Plaintiffs' claims that arise under the laws of the State of Illinois pursuant to the principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367(a) because said state-law claim is so related to some or all of Plaintiffs' claims over which this Court has original jurisdiction that they form part of the same case or controversy.

17.     This Court has personal jurisdiction over Defendants because they transact business in the State of Illinois and within this Judicial District.

18.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because the Defendants are entities or individuals subject to personal jurisdiction in this Judicial District. Venue is also proper in this Judicial District because all Defendants directly target business activities towards consumers in the State of Illinois and cause harm to Plaintiffs' business within this Judicial District by selling Counterfeit Products through their unlawful operation of the Infringing Websites, including those operating under their partnership and/or unincorporated association names.

<u>FACTUAL BACKGROUND</u>

19.     Plaintiffs are engaged in the business of manufacturing and distributing throughout the world, including within this Judicial District, a variety of high quality bridal gowns and formalwear (collectively, "Plaintiffs' Products") under the Federally registered trademarks identified in Paragraph 20, below.  Plaintiffs offer for sale and sell their trademarked

5

goods within this Judicial District. Defendants' sales of Counterfeit Products in violation of Plaintiffs' intellectual property rights are irreparably damaging Plaintiffs within this Judicial District.

20.     Plaintiffs are the owners of all right, title and interest in and to, *inter alia*, the following federally-registered trademarks and service marks issued by the United States Patent and Trademark Office (collectively "Plaintiffs' Trademarks"):

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,958,778 | ALLURE BRIDALS | May 10, 2011 | 25: BRIDAL GOWNS; BRIDAL DRESSES; BRIDESMAID DRESSES; PROM DRESSES; COCKTAIL AND EVENING WEAR, NAMELY, EVENING GOWNS, DRESSES, SKIRTS, BLOUSES AND JACKETS |
| 3,939,702 | EXCLUSIVE BRIDALS | April 5, 2011 | 25: BRIDAL GOWNS; BRIDAL DRESSES; BRIDESMAID DRESSES; PROM DRESSES; COCKTAIL AND EVENING WEAR, NAMELY, EVENING GOWNS, DRESSES, SKIRTS, BLOUSES AND JACKETS |
| 4,074,571 | NIGHT MOVES | December 20, 2011 | 25: BRIDAL GOWNS; BRIDAL DRESSES; BRIDESMAID DRESSES; PROM DRESSES; COCKTAIL AND EVENING WEAR, NAMELY, EVENING GOWNS, DRESSES, SKIRTS, BLOUSES AND JACKETS |
| 2,827,399 | JOVANI | March 30, 2004 | 25: WOMEN'S CLOTHING, NAMELY, FORMAL WOMEN'S |

| | | | |
|---|---|---|---|
| | | | WEAR, NAMELY, EVENING GOWNS, COCKTAIL DRESSES; AFTERNOON WEAR, NAMELY, SHIRTS, SKIRTS, PANTS, JACKETS, BLAZERS; CASUAL WEAR, NAMELY, BLOUSES, PANTS, T-SHIRTS, SHORTS, SKIRTS, JACKETS; BRIDAL GOWNS AND DRESSES, BRIDE'S MAID DRESSES, MOTHER OF THE BRIDE DRESSES, PROM GOWNS AND DRESSES, PAGEANT DRESSES, SPECIAL OCCASION DRESSES, SUITS, BLOUSES, TOPS, WRAP-AROUNDS, AND WRAPS |
| 4,116,887 | JVN | March 27, 2012 | 25: WOMEN'S CLOTHING, NAMELY, FORMAL AND CASUAL SEPARATES IN THE NATURE OF JACKETS, BLAZERS, PANTS, SHORTS, TOPS, BLOUSES, VESTS, SHRUGS, DRESSES AND JUMPSUITS |
| 4,255,978 | JOVANI | December 11, 2012 | 25: WOMEN'S SHOES |
| 4,000,319 | LA FEMME | July 26, 2011 | 25: CLOTHING, NAMELY, DRESSES, EVENING DRESSES AND GOWNS, EVENING TOPS, SKIRTS, AND SLACKS, WEDDING DRESSES AND GOWNS, BRIDESMAID DRESSES, PAGEANT DRESSES, PROM DRESSES, COCKTAIL DRESSES, AND SUITS |

| 2,596,028 | CAMERON BLAKE | July 16, 2002 | 25: BRIDAL DRESSES AND SOCIAL OCCASION DRESSES |
|---|---|---|---|
| 3,341,157 | JAMES CLIFFORD COLLECTION | November 20, 2007 | 25: BRIDAL GOWNS; EVENING, SOCIAL OCCASION, BRIDESMAIDS AND FLOWER GIRL APPAREL, NAMELY, GOWNS AND DRESSES |
| 2,484,508 | LE GALA BY MON CHERI | September 4, 2001 | 25: BRIDAL DRESSES AND SOCIAL OCCASION DRESSES |
| 3,447,055 | SOPHIA TOLLI | June 10, 2008 | 25: EVENING GOWNS, DRESSES FOR SOCIAL OCCAIONS, BRIDESMAID DRESSES, DRESSES FOR FLOWER GIRLS |
| 3,844,447 | ANGELINA FACCENDA | September 7, 2010 | 25: CLOTHING, NAMELY, BRIDAL WEAR IN THE NATURE OF DRESSES, WEDDING DRESSES AND BRIDESMAID DRESSES |
| 3,824,025 | BLU | July 27, 2010 | 25: CLOTHING, NAMELY, DRESSES, WEDDING DRESSES |
| 4,104,032 | FLAUNT BY MADELINE GARDNER | February 28, 2012 | 25: CLOTHING, NAMELY, DRESSES |
| 3,942,663 | JULIETTA | April 12, 2011 | 25: CLOTHING, NAMELY, DRESSES, WEDDING DRESSES |
| 3,827,188 | MADELINE GARDNER NEW YORK | August 3, 2010 | 25: CLOTHING, NAMELY, DRESSES, WEDDING DRESSES, BRIDESMAID DRESSES |
| 3,824,031 | MORI LEE BY MADELINE GARDNER | July 27, 2010 | 25: CLOTHING, NAMELY, DRESSES, WEDDING DRESSES, BRIDESMAID DRESSES |
| 3,882,191 | PAPARAZZI | November 30, 2010 | 25: CLOTHING, NAMELY, DRESSES |
| 4,110,893 | PAPARAZZI BY MADELINE GARDNER | March 13, 2012 | 25: CLOTHING, NAMELY, DRESSES |
| 4,132,777 | PRINCESITA DE | April 24, 2012 | 25: CLOTHING, |

| | VIZCAYA | | NAMELY, DRESSES |
|---|---|---|---|
| 4,160,191 | RONALD JOYCE | June 19, 2012 | 25: CLOTHING, NAMELY, DRESSES |
| 3,770,814 | STICKS AND STONES | April 6, 2010 | 25: CLOTHING, NAMELY, DRESSES, PARTY DRESSES, AND COCKTAIL DRESSES |
| 4,246,806 | VENI INFANTINO | November 20, 2012 | 25: CLOTHING, NAMELY, DRESSES |
| 4,160,190 | VICTORIA JANE | June 19, 2012 | 25: CLOTHING, NAMELY, DRESSES |
| 3,770,810 | VIZCAYA | April 6, 2010 | 25: CLOTHING, NAMELY, DRESSES |
| 3,888,607 | VOYÁGE | December 14, 2010 | 25: CLOTHING, NAMELY, DRESSES, WEDDING DRESSES |
| 3,737,267 | PROM CRAZY | January 12, 2010 | 25: CLOTHING, NAMELY, DRESSES, SHIRTS, SKIRTS, PANTS, PANT SUITS, SUITS, BLOUSES, LEGGINGS JEANS, VESTS, SWEATERS, SWIMSUITS, COVER UPS, SARONGS, SWEATSHIRTS, SWEATPANTS, TENNIS AND GOLF DRESSES, SHORTS, WARM-UP SUITS, RAINWEAR, CAPES, PONCHOS, HATS, BASEBALL CAPS, VISORS, SCARVES, SHAWLS, BELTS, JUMPSUITS, GLOVES, MITTENS, SHOES, BOOTS, SNEAKERS, SANDALS, OVERALLS, APRONS, NECKTIES, BOW TIES, SUSPENDERS, CUMMERBUNDS, JACKETS, COATS, SHAWLS, TANK TOPS, T-SHIRTS, SLEEPWEAR, LINGERIE, HOSIERY, AND GARTERS FOR |

| | | | MEN AND WOMEN |
|---|---|---|---|
| 3,190,731 | SYDNEY'S CLOSET | January 2, 2007 | 25: CLOTHING IN THE NATURE OF LADIES', CHILDREN'S AND TEEN CLOTHING, NAMELY, DRESSES, SHIRTS, SKIRTS, PANTS, SUITS, BLOUSES, LEGGINGS, JEANS, VESTS, SWEATERS, SWIMSUITS, COVER UPS, SARONGS, SWEATSHIRTS, SWEATPANTS, TENNIS/GOLF DRESSES, WARM-UP SUITS, RAINWEAR, CAPES, PONCHOS, HATS, SCARVES, SHAWLS, BELTS, JUMPSUITS, GLOVES, MITTENS, SHOES, BOOTS, SNEAKERS, OVERALLS, APRONS, NECKTIES, BOW TIES, AND SUSPENDERS, JACKETS, COATS, TANK TOPS, UNDERWEAR, BRAS, PANTIES, GARTER BELTS, WEDDING DRESSES, WEDDING GOWNS, AND T-SHIRTS |
| 3,325,341 | WE SIZE UP GLAMOUR | October 30, 2007 | 25: CLOTHING IN THE NATURE OF LADIES', CHILDREN'S AND TEEN CLOTHING, NAMELY, DRESSES, SHIRTS, SKIRTS, PANTS, SUITS, BLOUSES, LEGGINGS, JEANS, VESTS, SWEATERS, SWIMSUITS, COVER UPS, SARONGS, SWEATSHIRTS, SWEATPANTS, TENNIS/GOLF DRESSES, WARM-UP SUITS, RAINWEAR, CAPES, |

| | | | |
|---|---|---|---|
| | | | PONCHOS, HATS, SCARVES, SHAWLS, BELTS, JUMPSUITS, GLOVES, MITTENS, SHOES, BOOTS, SNEAKERS, OVERALLS, APRONS, NECKTIES, BOW TIES, AND SUSPENDERS, JACKETS, COATS, TANK TOPS, UNDERWEAR, BRAS, PANTIES, GARTER BELTS, WEDDING DRESSES, WEDDING GOWNS, AND T-SHIRTS |
| 4,476,945 | ALWAYS WEAR YOUR INVISIBLE CROWN | February 4, 2014 | 25: BALL GOWNS; BODICIES; BOTTOMS; BRIDESMAID DRESSES; DRESSES; EVENING DRESSES; EVENING GOWNS; FLIP FLOPS; FOOTWEAR; FOOTWEAR FOR WOMEN; FOOTWEAR NOT FOR SPORTS; FOOTWEAR, NAMELY, PUMPS; GLOVES; GLOVES FOR APPAREL; HEELS; KAFTANS; KNIT DRESSES; PUMPS; SANDALS; SANDALS AND BEACH SHOES; SASHES; SHAPEWEAR, NAMELY, BRAS, CAMIS, BODY SHAPER; SHAWLS; SHAWLS AND HEADSCARVES; SHAWLS AND STOLES; SHOES; SHOULDER SCARVES; SHOULDER WRAPS; SHOULDER WRAPS FOR CLOTHING; STILETTO HEELS; STOLES; STRAPLESS BRAS; STRAPS FOR BRAS; UNDER |

| | | | |
|---|---|---|---|
| | | | GARMENTS; UNDERARM CLOTHING SHIELDS; UNDERCLOTHES; UNDERCLOTHING; UNDERGARMENT ACCESSORIES, NAMELY, REMOVABLE SILICONE BUTTOCK ENHANCER PADS; UNDERGARMENTS; UNDERGARMENTS, NAMELY, WASPIES; UNDERWEAR; WOMEN'S CLOTHING, NAMELY, SHIRTS, DRESSES, SKIRTS, BLOUSES; WOMEN'S SHOES; WOMEN'S TOPS, NAMELY, CAMIS; WOMEN'S UNDERWEAR; WOVEN OR KNITTED UNDERWEAR |
| 3,346,348 | CLARISSE | November 27, 2007 | 25: WOMEN'S CLOTHING, NAMELY, FORMAL WOMEN'S WEAR, NAMELY, EVENING GOWNS, COCKTAIL DRESSES; BRIDAL GOWNS AND DRESSES, BRIDE'S MAIDS DRESSES, MOTHER OF THE BRIDE DRESSES, PROM GOWNS AND DRESSES, PAGEANT DRESSES, SPECIAL OCCASION DRESSES |
| 3,773,448 | CLARISSE | April 6, 2010 | 25: BRIDAL GOWNS; WEDDING GOWNS |
| 4,601,335 | KEEP CALM AND THINK PROM | September 9, 2014 | 25: BALL GOWNS; BODICIES; BOTTOMS; BRIDESMAID DRESSES; DRESSES; EVENING DRESSES; EVENING |

| | | | GOWNS; FLIP FLOPS; FOOTWEAR; FOOTWEAR FOR WOMEN; FOOTWEAR NOT FOR SPORTS; FOOTWEAR, NAMELY, PUMPS; GLOVES; GLOVES FOR APPAREL; HEELS; KAFTANS; KNIT DRESSES; PUMPS; SANDALS; SANDALS AND BEACH SHOES; SASHES; SHAPEWEAR, NAMELY, BRAS, CAMIS, BODY SHAPER; SHAWLS; SHAWLS AND HEADSCARVES; SHAWLS AND STOLES; SHOES; SHOULDER SCARVES; SHOULDER WRAPS; SHOULDER WRAPS FOR CLOTHING; STILETTO HEELS; STOLES; STRAPLESS BRAS; STRAPS FOR BRAS; UNDER GARMENTS; UNDERARM CLOTHING SHIELDS; UNDERCLOTHES; UNDERCLOTHING; UNDERGARMENT ACCESSORIES, NAMELY, REMOVABLE SILICONE BUTTOCK ENHANCER PADS; UNDERGARMENTS; UNDERGARMENTS, NAMELY, WASPIES; UNDERWEAR; WOMEN'S CLOTHING, NAMELY, SHIRTS, DRESSES, SKIRTS, BLOUSES; WOMEN'S SHOES; WOMEN'S TOPS, NAMELY, CAMIS; |
|---|---|---|---|

| | | | WOMEN'S UNDERWEAR; WOVEN OR KNITTED UNDERWEAR |
|---|---|---|---|
| 4,109,452 | PROMGIRL | March 6, 2012 | 25: DRESS SHIRTS; DRESS SUITS; DRESSES; DRESSING GOWNS; EVENING DRESSES; EVENING GOWNS; FOOTWEAR, NAMELY, PUMPS; GOWNS; PUMPS; SHOES; TOPS; WOMEN'S SHOES |
| 4,479,855 | SIMPLY DRESSES | February 11, 2014 | 25: BALLROOM DANCING SHOES; BODY SHAPERS; BODY STOCKINGS; BODY SUITS; BRAS; CAFTANS; CAMISETTES; CAMISOLES; FLIP FLOPS; FOOTWEAR; FOOTWEAR FOR WOMEN; FOOTWEAR, NAMELY, PUMPS; FOUNDATION GARMENTS WORN AROUND THE MIDSECTION OR THIGHS TO KEEP THE STOMACH IN AND CREATE A SLIMMING EFFECT; G-STRINGS; GIRDLES; GOWNS; HEADWEAR; HEADBANDS; HEELS; HOSIERY; KNEE-HIGH STOCKINGS; LADIES' UNDERWEAR; LEG SHAPERS; LEOTARDS; LINGERIE; PANTIES; PANTIES, SHORTS, AND BRIEFS; PUMPS; SANDALS; SANDALS AND BEACH SHOES; SASHES; SCARFS; SCARVES; SHAPEWEAR, |

| | | | NAMELY, BRAS, PANTIES, CAMIES; SHAWLS; SHAWLS AND HEADSCARVES; SHAWLS AND STOLES; SHOES; SHOULDER SCARVES; SHOULDER WRAPS; SHOULDER WRAPS FOR CLOTHING; STRAPLESS BRAS; STRAPS FOR BRAS; THONGS; UNDER GARMENTS; UNDERCLOTHES; UNDERCLOTHING; UNDERGARMENTS; UNDERWEAR; WOMEN'S SHOES; WOMEN'S TOPS, NAMELY, CAMIS; WOMEN'S UNDERWEAR |
|---|---|---|---|

All of the registrations listed above are valid, subsisting, unrevoked and uncancelled. Moreover, many of the registrations are also incontestable pursuant to 15 U.S.C. § 1065. The registrations for Plaintiffs' Trademarks constitute prima facie evidence of their validity and of Plaintiffs' exclusive right to use Plaintiffs' Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiffs also own common law rights in these and other marks for use in connection with bridal gowns and formalwear. Genuine and authentic copies of the U.S. federal trademark registration certificates for Plaintiffs' Trademarks are attached hereto as **Exhibit 1**.

21. Plaintiffs' brands, symbolized by Plaintiffs' Trademarks, are recognized symbols of high-quality bridal gowns and formalwear throughout the world. As detailed below, Plaintiffs have been using Plaintiffs' Trademarks for many years in connection with the advertising and sale of Plaintiffs' Products in interstate and foreign commerce, including commerce in the State of Illinois and in this Judicial District.

22.     Plaintiffs' Trademarks have been widely promoted, both in the United States and throughout the world, and are among the world's most famous and widely-recognized trademarks.  Consumers, potential consumers and other members of the public and the bridal industry not only associate Plaintiffs' Products with exceptional materials, style and workmanship, but also recognize that Plaintiffs' Products sold in the United States originate exclusively with the Plaintiffs.

23.     As of the date of this filing, Plaintiffs' Products are sold in approximately ___ retail stores throughout the United States and an additional ___ retail stores throughout the world.

24.     Plaintiffs maintain quality control standards for all Plaintiffs' Products. Genuine Plaintiffs' Products are distributed through a worldwide network of distributors and retailers, as well as Internet web stores owned and operated by Plaintiffs' (collectively "Websites") located at the following addresses:

| PLAINTIFF | WEBSITE(S) |
|---|---|
| Allure Bridals, Inc. | www.allurebridals.com |
| Alyce Designs, Inc. | www.alycedesigns.com |
| Jovani Fashion, Ltd. | www.jovani.com |
| La Femme Boutique, Inc. | www.lafemmefashio.com |
| Mon Cheri Bridals, LLC | www.moncheribridals.com |
| Mori Lee, LLC | www.morilee.com<br>www.paparazziprom.com<br>www.vizcayadress.com |
| Next Century Productions, Inc. d/b/a "Sydney's Closet" | www.sydneyscloset.com |
| Promgirl, LLC | www.promgirl.com |

25.     Sales of Plaintiffs' Products via the Websites represent a significant portion of Plaintiffs' business.  The Website features proprietary content, images and designs exclusive to Plaintiffs.

26.     Plaintiffs' Trademarks are highly visible and distinctive worldwide symbols of excellence in quality and uniquely associated with Plaintiffs and, as a result, Plaintiffs' Products bearing the Plaintiffs' Trademarks have generated millions of dollars of sales over the years.

27.     Plaintiffs' Trademarks have never been assigned or licensed to any of the Defendants in this matter.

28.     Plaintiffs' Trademarks are symbols of Plaintiffs' quality, reputation and goodwill and have never been abandoned.

29.     Further, Plaintiffs have expended substantial time, money and other resources developing, advertising and otherwise promoting Plaintiffs' Trademarks.  Plaintiffs' Trademarks have been continuously used and qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

30.     Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiffs' ownership of Plaintiffs' Trademarks, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

31.     In or around 2015, Plaintiffs identified Plaintiffs' Trademarks on the Infringing Websites designed to resemble authorized retail Internet stores selling genuine Plaintiffs' Products that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiffs in violation of Plaintiffs' Trademarks.

17

32.     Plaintiff, Mon Cheri Bridals, LLC ("Mon Cheri"), is the owner of all right, title and interest in and to United States Copyright Registration No. VA 1-935-286 ("Mon Cheri Copyright").  The aforementioned registration is valid, subsisting, unrevoked and uncancelled. Moreover, this registration is also incontestable.  A genuine and authentic copy of the U.S. federal copyright registration certificate for the above-listed Mon Cheri Copyright is attached hereto as **Exhibit 2**.

33.     Among the exclusive rights granted to Mon Cheri under the Copyright Act are the exclusive rights to use and reproduce photographs protected by the Mon Cheri Copyright and to distribute these photographs to the public.

34.     All Plaintiffs own common law copyrights respecting Plaintiffs' original images displayed on the Websites for use in connection with bridal gowns and formalwear.

35.     In or around 2015, Plaintiffs identified photographic images on the Infringing Websites that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiff ("Infringing Images") in violation of the Mon Cheri Copyright and Plaintiffs' common law copyrights.

36.     The Infringing Images Defendants reproduced, displayed and distributed on Defendants' Infringing Websites are the subject of the Mon Cheri Copyright and Plaintiffs' common law copyrights (hereinafter "Plaintiffs' Copyrights").

37.     Defendants have manufactured, imported, distributed, offered for sale and sold Counterfeit Products, including bridal gowns and formalwear using the Plaintiffs' Trademarks and protected images in violation of the Mon Cheri Copyright and Plaintiffs' Copyrights and continue to do so.

38.     Defendants, without authorization or license from Plaintiffs, knowingly and willfully used and continue to use the Plaintiffs' Trademarks in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, *inter alia*, the Internet.  The Counterfeit Products are not genuine Plaintiffs' Products.  The Plaintiffs did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution.  Each Infringing Website offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

39.     Defendants falsely advertise the sale of authentic Plaintiffs' Products through the Infringing Websites by stealing and copying Plaintiffs' copyrighted images and photographs of Plaintiffs' genuine products in violation of the Mon Cheri Copyright and Plaintiffs' Copyrights.  Furthermore, the Infringing Websites offer live online service and display normal indicia of security protection that would appear on legitimate websites, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.  Defendants' Infringing Websites appear to unknowing consumers to be legitimate web stores authorized to sell genuine Plaintiffs' Products.

40.     Defendants also deceive unknowing consumers by using the Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of the Infringing Websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiffs' Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics so that listings for the Infringing Websites appear at or near the top of relevant search results and misdirect consumers searching for genuine Plaintiffs' Products.  Furthermore, Defendants utilize

similar illegitimate SEO tactics to propel new domain names to the top of search results after others are disabled. As such, Plaintiff also seeks to disable the Infringing Websites owned and operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products.

41. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Websites. For example, many of Defendants' names and physical addresses used to register the Infringing Websites are incomplete, contain randomly typed letters, or fail to include cities or states. Other Infringing Websites use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites on various platforms using the identities listed in Schedule "A" to the Complaint, as well as other unknown fictitious names and addresses. Such registration patterns for new Internet domains are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Websites from being disabled.

42. Defendants' use of the Plaintiffs' Trademarks on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiffs.

43. Upon information and belief, Defendants will continue to register or acquire new domain names for the purpose of selling Counterfeit Goods that infringe upon the Plaintiffs' Trademarks unless preliminarily and permanently enjoined.

44. Plaintiffs have no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. §1114)

45.     Plaintiffs repeat and reallege the foregoing allegations above as if fully set forth herein.

46.     The Plaintiffs' Trademarks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with Plaintiffs' Products and related services of the very highest quality and reputation finding their source from Plaintiffs.

47.     Without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in the Plaintiffs' Trademarks and the fact that Defendants' Counterfeit Products are sold using marks which are identical or confusingly similar to the Plaintiffs' Trademarks, Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising Counterfeit Products without Plaintiffs' permission in direct competition with Plaintiffs' sale of genuine Plaintiffs' Products, in or affecting interstate commerce.

48.     Defendants' willful, intentional and unauthorized use of copies or simulations of the Plaintiffs' Trademarks in conjunction with Defendants' operation of the Infringing Websites to sell Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

49.     Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a))

50.     Plaintiffs repeat and reallege the foregoing allegations above as if fully set forth herein.

51.     The Counterfeit Products sold and offered for sale by Defendants on the Infringing Websites are of the same nature and type as Plaintiffs' Products sold and offered for sale by Plaintiffs and, as such, Defendants' use is likely to cause confusion to the general purchasing public respecting the origin, sponsorship, or approval of the Counterfeit Products by Plaintiffs.

52.     By misappropriating and using the Plaintiffs' Trademarks on the Counterfeit Products, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

53.     Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by Plaintiffs, all to Defendants' profit and to Plaintiffs' damage and injury.

54.     Defendants' aforesaid acts constitute a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiffs' Trademarks, genuine

product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

## COUNT THREE
### CYBERPIRACY
### 15 U.S.C. §1125(d)

55.    Plaintiffs repeat and reallege the foregoing allegations above as if fully set forth herein.

56.    At all times relevant hereto, Plaintiffs have been and still are the owners of the rights, title and interest in and to the Plaintiffs' Trademarks.

57.    Upon information and belief, certain Defendants have acted with the bad faith intent to profit from the Plaintiffs' Trademarks and the goodwill associated with the Plaintiffs' Trademarks by registering various domain names which are identical or confusingly similar to or dilutive of the Plaintiffs' Trademarks.

58.    Defendants have no intellectual property rights in or to the Plaintiffs' Trademarks.

59.    Defendants' actions constitute willful cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

60.    Defendants' conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in Plaintiffs' Trademarks. At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiffs' rights.

61.    The aforesaid conduct is causing Plaintiffs damages and immediate and irreparable injury.

62.    Plaintiffs have no adequate remedy at law.

## COUNT FOUR
## COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 501)
### Plaintiff Mon Cheri Bridals, LLC

63.     Plaintiffs repeat and reallege the foregoing allegations above as if fully set forth herein.

64.     Mon Cheri has complied with the registration requirements of 17 U.S.C. § 411(a) in obtaining the Mon Cheri Copyright.

65.     At all times relevant hereto, Mon Cheri has been producer and sole owner of the original photographic images that are the subject of this action and protected by the Mon Cheri Copyright.  Among the rights granted to Mon Cheri is the exclusive right to market and sublicense the right to copy, reproduce and display the image.  Additionally, Mon Cheri is granted the exclusive right to make and control claims related to infringements of copyrights in the image.

66.     Defendants have intentionally reproduced, displayed, distributed and made other infringing uses of the protected images, without authorization by Mon Cheri.

67.     As a result of its conduct, Defendants are liable to Mon Cheri for copyright infringement.

68.     Defendants knew their acts constituted copyright infringement.

69.     Defendants' conduct was willful within the meaning of the Copyright Act.

70.     As a result of their wrongful conduct, Defendants are liable to Mon Cheri for copyright infringement pursuant to 17 U.S.C. § 501.  Mon Cheri has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill.

71.     Mon Cheri is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of their wrongful conduct. 17 U.S.C. § 504. Alternatively, Mon Cheri is entitled to statutory damages under 17 U.S.C. § 504(c).

72.     In addition, because Defendants' infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

## COUNT FIVE
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

73.     Plaintiffs repeat and reallege the foregoing allegations above as if fully set forth herein.

74.     Defendants' acts of misappropriating and using the Plaintiffs' Trademarks and trade names in order to misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products, constitute deceptive acts or practices in or affecting commerce, in violation of 815 ILCS § 510, et seq.

75.     Defendants' acts of stealing Plaintiffs' original, copyrighted images that infringe upon the Mon Cheri Copyright and Plaintiffs' Copyrights to sell Counterfeit Products through the Infringing Websites, constitute deceptive acts or practices in or affecting commerce, in violation of 815 ILCS § 510, et seq.

76.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiffs; causing a likelihood of confusion and/or misunderstanding as to the source of the Counterfeit Products; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiffs' Products; representing that the Counterfeit Products have Plaintiffs' approval when they do not; and engaging in other conduct that creates a likelihood of confusion or misunderstanding among the general public.

77.     Defendants' acts complained of herein were done willfully.

78.     Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment in their favor on all counts of this Complaint and pray for the following equitable relief against all Defendants:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(i)     using the Plaintiffs' Trademarks or any reproductions, counterfeits, copies or colorable imitations of the Plaintiffs' Trademarks in connection with the distribution, marketing, advertising, offer for sale and/or sale of any product that is not a genuine Plaintiffs' Product or is not authorized by Plaintiffs to be sold in connection with the Plaintiffs' Trademarks;

(ii)    passing off, inducing or enabling others to sell or pass off any Counterfeit Products or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the Plaintiffs' Trademarks;

(iii)   committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

26

(iv)     further infringing the Plaintiffs' Trademarks and damaging Plaintiffs' goodwill;

(v)     competing unfairly with Plaintiffs in any manner;

(vi)     shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and that bear the Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

(vii)     using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Websites, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

(viii)     operating and/or hosting websites at the Infringing Websites and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiffs' Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine Plaintiffs' Product or not authorized by Plaintiffs to be sold in connection with the Plaintiffs' Trademarks; and

(ix)     registering any additional domain names that use or incorporate any of the Plaintiffs' Trademarks; and

27

2.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(i)      displaying images protected by the Mon Cheri Copyright and Plaintiffs' Copyrights in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine Plaintiffs' Product or is not authorized by Plaintiffs to be sold in connection with the Mon Cheri Copyright or Plaintiffs' Copyrights; and

(ii)     shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and protected by the Mon Cheri Copyright or Plaintiffs' Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof; and

3.      That Defendants, within ten (10) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs' counsel a written report under oath setting forth in detail the manner in which Defendants have complied with the injunctive relief set forth in Paragraphs 1 and 2, above;

4.      Entry of an order that, upon Plaintiffs' request, the Internet Corporation for Assigned Names and Numbers ("ICANN") shall take all actions necessary to ensure that the registrars and the top level domain registries responsible for the Infringing Websites transfer, change the registrar of record, and/or disable the Infringing Websites as directed by the Court. These domain name registries or registrars, include but are not limited to, VeriSign, Inc.,

28

NeuStar, Inc., Afilias Limited, Nominet UK, and the Public Interest Registry, and shall be required to transfer the domain names associated with Defendants' Infringing Websites to a registrar to be appointed by Plaintiffs to re-register the domain names in the name of Plaintiffs' authorized representative or agent and under Plaintiffs' ownership;

5.     Entry of an order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars and domain-name registries or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants engage in the sale of Counterfeit Products using the Plaintiffs' Trademarks;

6.     Entry of an order canceling or, at Plaintiffs' election, transferring the Infringing Websites and any other domain names used by the Defendants to engage in their counterfeiting of the Plaintiffs' Trademarks at issue to Plaintiffs' control so they may no longer be used for illegal purposes;

7.      That Defendants account for and pay over to Plaintiffs any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Plainitffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

8.     In the alternative, that Plaintiffs be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiffs' Trademark counterfeited by each Defendant and One Hundred Thousand Dollars (U.S.) and No Cents ($100,000.00) per domain name pursuant to 15 U.S.C. § 1117(d);

9.     That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Mon Cheri's audiovisual works, photographs or other materials protected by the Mon Cheri Copyright, which are in Defendants' possession or under their control;

10.    That the Court enter an order, pursuant to 17 U.S.C. § 504(b), declaring that Defendants hold in trust, as constructive trustees for the benefit of Mon Cheri, all profits received by defendant from its reproduction, distribution, display or other infringing uses of the photographic images protected by the Mon Cheri Copyright, and requiring Defendants to provide Mon Cheri a full and complete accounting of all profits received by Defendants;

11.    That the Court order Defendants to pay damages to Mon Cheri, including an award of actual damages suffered by Mon Cheri, as a result of the infringements and all profits of Defendants that are attributable to those infringements, pursuant to 17 U.S.C. § 504(b);

12.    That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

13.    Grant Plaintiffs such other and further legal relief as may be just and proper.

Dated this 4th day of January, 2016.          Respectfully submitted,

 s/ Richard J. Holmes
Richard J. Holmes
818 Water Wheel Court
Charlotte, North Carolina 28209
872.216.4104
legal@counterfeittechnology.com

*Counsel for American Bridal and Prom Industry Association, Inc., Allure Bridals, Inc., Alyce Designs, Inc., Jovani Fashion, Ltd., La Femme Boutique, Inc., Mon Cheri Bridals, LLC, Mori Lee, LLC, Next Century Productions, Inc. d/b/a "Sydney's Closet", and Promgirl, LLC*