IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN BRIDAL AND PROM INDUSTRY ASSOCIATION, INC., ALLURE BRIDALS, INC., ALYCE DESIGNS, INC., JOVANI FASHION, LTD., LA FEMME BOUTIQUE, INC., MON CHERI BRIDALS, LLC, MORI LEE, LLC, NEXT CENTURY PRODUCTIONS, INC. d/b/a "SYDNEY'S CLOSET, and PROMGIRL, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>SHEN CHEN, et al.,<br><br>    Defendants. | Case No. 1:16-cv-00023<br><br>**Judge John Robert Blakey**<br><br>**Magistrate Judge Susan E. Cox** |

## DECLARATION OF RICHARD J. HOLMES, ESQ.

I, Richard J. Holmes, of Charlotte, North Carolina, declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth herein. I make this declaration in support of Plaintiffs' *Ex Parte* Motion for Entry of Temporary Restraining Order (the "*Ex Parte* Motion for TRO") and, if called as a witness, I could and would competently testify as follows:

2. I am an attorney at law, duly admitted to practice before the General Bar of the United States District Court for the Northern District of Illinois, the Courts of the States of North Carolina and Vermont, the United States District Court for the Western District of North Carolina and the United States District Court for District of Vermont.

3. Plaintiffs are seeking *ex parte* relief and are requesting service by email and electronic publication to Defendants, the Partnerships and Unincorporated Associations Identified on Schedule "A" to Plaintiffs' Amended Complaint (collectively "Defendants").

1

Defendants operate Internet domains ("Infringing Websites") to sell counterfeit products in violation of Plaintiffs' trademark and copyright rights ("Counterfeit Products"). In my personal experience working with brand owners who have identified websites selling counterfeit products, if Plaintiffs proceed on normal advance notice prior to seeking to preclude modification of control of the Infringing Websites by having the registrars lock the Infringing Websites, the Defendants can easily and quickly transfer the registrations for the Infringing Websites, or modify registration data and content, change hosts, and redirect traffic to other websites. Defendants will also transfer assets from U.S.-based financial institutions to offshore accounts outside the jurisdiction of this Court. Such actions by Defendants will effectively thwart Plaintiffs' ability to obtain meaningful relief and will continue to irreparably harm Plaintiffs through Defendants' sale of Counterfeit Products.

4. Upon entry of a Temporary Restraining Order in this matter, I will notify the Defendants by sending copies of Plaintiffs' *Ex Parte* Motion for TRO and supporting papers via e-mail to the e-mail addresses provided by the Defendants to the registrars responsible for their respective domain names or the email addresses and/or online submission forms identified on the Infringing Websites. A genuine and authentic chart summarizing the WHOIS registration data and contact information provided by the Defendants to their registrars is attached hereto as **Exhibit 1**. I will also provide a copy of the Order by email to the registrar of record for each of the Infringing Websites, so that the registrar of record for each of the Infringing Websites may, in turn, notify each registrant of terms of the Order and provide notice of the locking of the domain name to the registrant of record. The registrar of record will also be required to prevent the transfer of ownership of each Infringing Website pending the outcome of this case pursuant to the terms of the Order.

5. A 2014 U.S. Customs and Border Protection report on seizure statistics reported that the government seized over $1.22 billion in counterfeit goods in 2014. This report also indicated that of the various types of commodities seized by the U.S. Customs and Border Protection in 2014, wearing apparel and accessories was the top-ranked commodity seized, representing 28% of all seizures. A genuine and authentic copy of this report is attached hereto as **Exhibit 2**.

6. A February 2011 report commissioned by Business Action to Stop Counterfeiting and Piracy ("BASCAP") entitled "Estimating the Global Economic and Social Impacts of Counterfeiting and Piracy" included findings that counterfeit and pirated products account for an estimated $650 billion in losses in international trade, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue, of more than $125 billion every year. This figure is expected to increase each year. A genuine and authentic copy of this report is attached hereto as **Exhibit 3**.

7. I have accessed the Internet Corporation for the Assigned Names and Numbers ("ICANN") website at www.icann.org in order to download the ICANN Registrar Accreditation Agreement. A genuine and authentic copy of the ICANN Registrar Accreditation Agreement is attached hereto as **Exhibit 4**. According to Section 3.7.7.1 of the Registrar Accreditation Agreement established by ICANN, an individual or entity that registers a domain name is required to provide "accurate and reliable contact details and promptly correct and update them during the term of the . . . registration, including . . . postal address."

8. I have reviewed the WHOIS registration data for each of the respective Infringing Websites in **Exhibit 1** for which information is available. This information reveals that Defendants have ignored the applicable ICANN regulations and provided false physical address

information to the domain name registrars in order to avoid full liability. For example, many of Defendants' names and addresses used to register the Infringing Websites are incomplete, contain randomly typed letters, fail to include cities or states, or use privacy services that conceal this information. Identical contact information among multiple domain names also suggests that many of the aliases used to register the Infringing Websites are used by the same individual or entity.

9. I have reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), to which China is a signatory. The Hague Convention does not preclude service by email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A genuine and authentic copy of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as **Exhibit 5**.

10. Genuine and authentic copies of the unpublished decisions cited in Plaintiffs' Memorandum of Law in Support of *Ex Parte* Motion for TRO are attached hereto as **Exhibit 6.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 4th day of January, 2016

_____
Richard J. Holmes