UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| American Bridal & Prom Industry Association, Inc., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16 C 0023 |
| v. | ) ) ) | Judge John Robert Blakey |
| The Partnerships and Unincorporated Associations Identified on Schedule A, | ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Trademark suits against foreign defendants based upon exclusively online sales of allegedly counterfeit products are becoming increasingly common in this district. Courts here (including this Court) regularly enter injunctions and freeze the assets of counterfeiters who reside and operate exclusively in China and never set foot in Illinois. This case serves as a reminder that not every foreign counterfeiter may be sued here and that the well-established limits to our jurisdictional reach apply with equal force in this digital economy.

Background and Procedural History

On January 4, 2016, Plaintiffs American Bridal & Prom Industry Association, Inc.; Allure Bridals, Inc.; Alyce Designs, Inc.; Jovani Fashion, Ltd.; La Femme Boutique, Inc.; Mon Cheri Bridals, LLC; Mori Lee, LLC; Next Century Productions, Inc. d.b.a. "Sydney's Closet"; and Promgirl, LLC, filed suit in this district against a

group of individuals and unincorporated business associations, as well as 100 John Does, who, upon information and belief, reside in foreign jurisdictions. Complaint [1], ¶¶1-10. According to the complaint, each defendant "targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiffs' intellectual property rights . . . to consumers within the United States, including the State of Illinois and this Judicial District." *Id.*, ¶11. Plaintiffs attached to the complaint various trademark registrations covering Plaintiffs' business and brand names and a certificate of registration for the photos of Mon Cheri Bridals' Fall 2014 Collection. Complaint, Exhibits 1 [1-1], 2 [1-2]. Plaintiffs alleged that the defendants, by using these photos and trademarks, violated the Lanham Act, the Copyright Act and the Illinois Uniform Deceptive Trade Practices Act. Complaint [1], ¶¶45-78.

The initial complaint did not list or otherwise name the defendants, but identified them as "The Partnerships and Unincorporated Associations Identified on Schedule 'A' and John Does 1-100." Complaint [1], p. 1. Schedule A was purportedly filed under seal. When a document is filed under seal, the Court maintains access to it; it is simply kept from public view. Here, however, Plaintiffs never filed a motion to seal and did not otherwise follow the proper sealing and docketing procedures. As a result, what appeared on the Court's docket was simply a sheet saying "Schedule 'A' [Contents Filed Under Seal]." [1-3]. The Court had no way of knowing at that time how many entities and organizations Plaintiffs had sued.

2

Plaintiffs immediately filed an amended complaint [6], purportedly under seal. Plaintiffs again failed to file a motion or otherwise follow the proper procedures, and, as a result, what appeared on the docket was not an amended complaint, but simply a blank caption, with "[CONTENTS FILED UNDER SEAL]" on it. *See* [6]. The "sealed" content was not made available to the Court.

Also on January 4, 2016, Plaintiffs filed: (1) an *ex parte* motion for entry of a temporary restraining order ("TRO"), which sought an order to temporarily transfer the infringing websites, a temporary asset restraint, expedited discovery and permission to effect service of process by email and electronic publication [7]; (2) a 58-page memorandum in support of the *ex parte* TRO motion [10]; (3) a motion for leave to file the oversized memorandum [8]; (4) a motion for leave to temporarily seal documents [9]; (5) a declaration from Plaintiffs' counsel justifying the *ex parte* nature of the action [11]; (6) a declaration from Stephen Lang, the President of American Bridal & Prom Industry Association, Inc. and CEO of Mon Cheri Bridals, describing Plaintiffs' trademarks and brands and detailing the alleged counterfeiting [12]; and (7) a declaration from Suren Ter Saakov, the CEO and founder of Counterfeit.Technology, a company that uses customized web crawler software programs to assist in detecting online counterfeiting [13].

On January 5, 2016, the Court granted Plaintiffs' motion to seal, granted the motion for leave to file the oversized brief and set the TRO motion for hearing on January 13, 2016. Prior to the hearing, Plaintiffs filed another amended complaint on January 8, 2016 [18]. This amended complaint, unlike the prior complaints,

actually listed the defendants; and it did so in both the caption – which ran almost 32 pages – and the body of the complaint, with the introductory paragraph taking up another 24 pages. Amended Complaint [18], pp. 1-56. The allegations were otherwise substantively identical to the allegations in the original complaint.

According to both versions of the complaint (the unsealed amended complaint [18] is the operative complaint), Plaintiffs American Bridal & Prom Industry Association, Inc., Allure Bridals, Inc., Alyce Designs, Inc., Jovani Fashion, Ltd., La Femme Boutique, Inc., Mon Cheri Bridals, LLC, Mori Lee, LLC, Next Century Productions, Inc., d/b/a "Sydney's Closet," and Promgirl, LLC (collectively, "Plaintiffs"), are respectively a not-for-profit trade association and businesses that manufacture and distribute high quality bridal gowns and formalwear. Amended Complaint [18], ¶¶1, 19. Plaintiffs are the owners of all right, title and interest in and to 35 federally-registered trademarks and service marks. *Id.*, ¶¶19-20. They distribute their products through a worldwide network of distributors and retailers, as well as Internet web stores owned and operated by Plaintiffs. *Id.*, ¶24.

With regard to jurisdiction, the amended complaint alleged that: Plaintiff American Bridal & Prom Industry is a New Jersey not-for-profit corporation with its principal place of business in New Jersey; Plaintiff Allure Bridals, Inc. is a Tennessee corporation with its principal place of business in Tennessee; Plaintiff Alyce Designs, Inc. is an Illinois corporation with its principal place of business in Illinois; Plaintiff Jovani Fashion, Ltd. is a New York corporation with its principal place of business in New York; Plaintiff La Femme Boutique, Inc. is a California

corporation with its principal place of business in California; Plaintiff Mon Cheri Bridals, LLC is a New Jersey limited liability company with its principal place of business in New Jersey; Plaintiff Mori Lee, LLC is a limited liability company with its principal place of business in Florida; Plaintiff Next Century Productions, Inc. d/b/a "Sydney's Closet" is a Missouri corporation with its principal place of business in Missouri; and Plaintiff Promgirl, LLC is a Delaware limited liability company with its principal place of business in Delaware. Amended Complaint [18], ¶¶1-9. Defendants are "all individuals and unincorporated business associations who, upon information and belief, reside in foreign jurisdictions." *Id.*, ¶10.

Plaintiffs alleged subject matter jurisdiction based on both federal question and diversity of citizenship. Amended Complaint [18], ¶15. They alleged that the Court "has personal jurisdiction over Defendants because they transact business in the State of Illinois and within this Judicial District." *Id.*, ¶17. They alleged that venue is proper in this district because "the Defendants are entities or individuals subject to personal jurisdiction in this Judicial District" and because "all Defendants directly target business activities towards consumers in the State of Illinois and cause harm to Plaintiffs' business within this Judicial District by selling Counterfeit Products through their unlawful operation of the Infringing Websites, including those operating under their partnership and/or unincorporated association names." *Id.*, ¶18.

Plaintiffs alleged that Defendants operate fully interactive commercial websites, which offer to sell and (on information and belief) sell counterfeit products

that violate Plaintiffs' intellectual property rights. *Id.*, ¶¶10-12. In the operative complaint, Plaintiffs alleged four causes of action against all Defendants: federal trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. §1114 (Count One); unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. §1125(a) (Count Two); cyberpiracy in violation of the Lanham Act, 15 U.S.C. §1125(d) (Count Three); and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §510, et seq. (Count Five). Amended Complaint [18], ¶¶45-62, 73-78. Plaintiff Mon Cheri also alleged a claim of copyright infringement in violation of the Copyright Act, 17 U.S.C. §501, against all Defendants (Count Four). *Id.*, ¶¶63-72.

The Court held a hearing on Plaintiffs' *ex parte* TRO motion [7], as scheduled, on January 13, 2016. In their motion, Plaintiffs sought to enjoin Defendants from manufacturing, importing, distributing, offering for sale and selling counterfeit products, and also sought a temporary transfer of the infringing websites and a temporary restraint of Defendants' assets. Based upon the record presented at that time, including the allegations in the complaint and the declarations submitted in support of the motion, this Court initially granted the motion, entered a TRO and ordered Plaintiffs to post a $10,000 surety bond to cover any damages that may be incurred as a result of any wrongful restraint. *See* Sealed TRO Order [30]. The TRO, issued January 13, 2016, was set to expire January 27, 2016. *Id.*, ¶19.

On January 20, 2016, Plaintiffs moved for the entry of a preliminary injunction against Defendants. *See* [31]. Along with their motion, Plaintiffs filed a

memorandum in support [32] and a declaration from Plaintiffs' counsel, Richard J. Holmes [33], stating that he had been working with Plaintiffs' expert witness and third party payment providers to freeze the financial accounts associated with the infringing websites and to transfer and temporarily disable those websites. The hearing on the preliminary injunction motion was scheduled for January 25, 2016. At that time, Plaintiffs' counsel asked the Court to include in the TRO "a reference to companies that provide customer relationship management services to any of the defendants." The Court denied that request and advised counsel that if he intended to expand the scope of the TRO, he needed to provide an evidentiary basis for doing so. The Court set the matter for hearing on February 10, 2016, and extended the TRO to that date. *See* Order dated January 25, 2016 [44].

Before the evidentiary hearing on the motion and while the TRO was in effect, a series of Defendants contacted the Court claiming that they had been wrongfully targeted and restrained. For example, the Court received a letter from Michael MacMahon indicating that his Irish business, which operates lailamonroe.com, "should not have been included with thousands of websites based in China in the above case" and that "[m]inimal due diligence by the [Plaintiffs'] attorney would have . . . shown this fact." [48]. MacMahon reported that he had called and emailed Plaintiffs' counsel and heard nothing in reply. *Id.* MacMahon also attached an email from Plaintiffs' counsel, received after MacMahon threatened legal action, stating that counsel would "review our case file more closely right now and respond to you shortly." *Id.* [48-2]. In advance of the

February 10, 2016 motion hearing, Plaintiffs dismissed more than three hundred Defendants from the case, including MacMahon's company. *See* [41], [50], [51]. Still, roughly three thousand remained subject to the TRO.

At the motion hearing on February 10, 2016, the Court expressed concern about Plaintiffs' initial representations in support of the TRO, the purported foundation for personal jurisdiction, and the scope of the requested injunctive relief. *See* Transcript of Proceedings of February 10, 2016 [60]. Based upon the communications from Defendants and counsel's responses thereto, including the wholesale voluntary dismissal of hundreds of Defendants, the Court advised counsel that the record raised significant concerns that he had failed to make the necessary due diligence inquiry as to all of the defendants named in Schedule A. *Id.*, pp. 3-4. The Court denied Plaintiffs' request to extend the TRO, denied without prejudice the preliminary injunction motion, and gave counsel leave to refile the motion to the extent he could demonstrate that he had a good faith basis for naming each and every Defendant in the operative complaint. *Id.*, pp. 4-5.

On March 10, 2016, Plaintiffs filed an amended motion for preliminary injunction [63], along with a memorandum in support [64], a declaration from Jon Liney [65] and another declaration from Suren Ter Saakov [66]. None of these pleadings, however, addressed the particular Defendant-specific concerns raised by the Court at the February 10, 2016 hearing. These pleadings, like the ones filed previously, lumped together all 3,000 Defendants as one and ostensibly assumed, without any evidentiary basis, that infringement by one could be attributable to all.

8

These pleadings, like the ones filed previously, also failed to provide any specific basis for this Court to exercise personal jurisdiction over each of the proposed defendants. Liney's declaration stated that, despite the Bridal & Prom Industry's efforts to crackdown on counterfeiters, he has "seen the number of online websites selling counterfeit wedding gowns and formalwear increase significantly . . . ." Liney Declaration [65], ¶6. He did not say anything about the particular defendants named in the lawsuit, and his declaration did not provide a basis for holding any of the defendants accountable in this Court.

Ter Saakov's declaration represented that each of the named defendant domains "has either used Plaintiffs' trademarks or copyrighted images, or both." [66], ¶9. Ter Saakov represented that his company "uses a large web crawler coupled with sophisticated algorithms and detection models to identify counterfeit products offered for sale across the Internet" and that the "web crawler collects thousands of various data points from websites and the algorithms identify which of the websites are likely counterfeiters, using a combination of information supplied by the clients and inspecting the websites for characteristics consistent with counterfeiting." Ter Saakov Declaration [66], ¶5. But Counterfeit Technology's anti-counterfeiting software program is merely an investigative tool and does not, without more, constitute proof of actual counterfeiting. Indeed, Ter Saakov admitted that his programs only identify "likely counterfeiters." *Id.*, ¶5. Thus, even though such programs remain useful tools to identify potential targets for further inquiry, the natural existence of numerous false-positives in the results makes them

9

a poor substitute for a defendant-specific inquiry. In his declaration, Ter Saakov provided only one specific example of alleged counterfeiting that he was able to target using his program. That example related to the infringing website "lailamonroe.com." Significantly, that defendant had already been voluntarily dismissed from this case because Plaintiffs' counsel concluded that any possible infringement was not intentional. Ter Saakov's declaration, like Liney's statement, failed to provide a sufficient factual or legal basis for holding any remaining defendant accountable in this Court for the injunctive relief sought by the complaint. Indeed, contrary to the jurisdictional allegations in the complaint, Plaintiff offered no facts from which the Court could conclude that any defendant targeted citizens of this state, directed any activities at this state, or otherwise had anything to do with the state of Illinois.

At the hearing on March 16, 2016, the Court asked Plaintiffs' counsel if he had any additional materials to submit in response to the Court's jurisdictional concerns. Counsel indicated that he did not. When asked to articulate the basis for personal jurisdiction over the 3,343 named defendants, counsel represented that, in his view, personal jurisdiction exists simply "by virtue of each one of the defendant domains offering for sale a counterfeit product that either infringes upon trademarks of the plaintiffs or the copyrighted images of the plaintiffs." Transcript of Proceedings of March 16, 2016 [71], pp. 2-3. Counsel argued that the existence of a website accessible in Illinois was enough to confer personal jurisdiction over a defendant residing and operating anywhere in the world and conceded that the

10

existence of such websites was the sole basis for asserting personal jurisdiction. The Court denied the preliminary injunction motion and indicated that it would issue a written decision at a later date. This opinion provides the sum and substance of that decision.[1]

Discussion

For a TRO or preliminary injunction order to be valid, the issuing Court must have personal jurisdiction over the defendants. *E.g., Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007)). Neither the Lanham Act nor the Copyright Act authorizes nationwide service of process. *Monster Energy Company v. Wensheng*, 136 F.Supp.3d 897, 902 (N.D. Ill. 2015)(citing *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (Lanham Act); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997) (Copyright Act)). As a result, this Court, sitting in Illinois, may exercise jurisdiction over Defendants only if authorized both by the United States Constitution and, as applicable, Illinois law. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Because the Illinois Constitution allows for personal jurisdiction "only where it is fair, just, and reasonable . . . considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois," *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008),

---

[1] Following the Court's denial of the preliminary injunction motion, Plaintiffs filed a notice of voluntary dismissal [73] as to all remaining defendants.

11

the analysis under Illinois law and the United States Constitution merges. *E.g., Illinois v. Hemi Group LLC*, 622 F.3d 754, 756 (7th Cir. 2010). Thus, as a practical matter, this Court may exercise personal jurisdiction over foreign defendants only when they have "certain minimum contacts with [Illinois] such that maintenance of the suit [here] does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

There are two types of personal jurisdiction: general jurisdiction, which exists only when the party's affiliations with Illinois "are so constant and pervasive 'as to render [it] essentially at home" here, *Daimler AG v. Bauman*, – U.S. –, 134 S.Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); and specific jurisdiction, which is "case-specific" and exists where the defendant has "purposefully directed" its activities at residents of the forum state and where the plaintiff's claim is "linked to the [defendant's] activities or contacts with" Illinois, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73; *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695 (7th Cir. 2015).

Plaintiffs have not alleged the type of contacts necessary to justify the exercise of general jurisdiction over any of the 3,343 defendants named in this lawsuit. Nor is there any evidence to suggest that any of these defendants – who all reside in foreign jurisdictions – maintained the type of Illinois presence that is required to justify exercising general personal jurisdiction over them. Amended

Complaint [18], ¶10.  In short, Plaintiffs failed to allege facts that would allow this Court to conclude that any of the defendants are "at home" in Illinois.

Instead, the exercise of personal jurisdiction here is based exclusively upon Defendants' alleged maintenance of interactive websites.  Without more (and there is not more here), this fact alone is not enough to support general personal jurisdiction.  *See, e.g., Richter v. INSTAR Enterprises Int'l, Inc.*, 594 F. Supp. 2d 1000, 1009 (N.D. Ill. 2009) ("[R]egardless how interactive a website is, it cannot form the basis for [general] personal jurisdiction . . . unless the contacts through the website are so substantial that they may be considered 'systematic and continuous' for the purpose of general jurisdiction."); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000) ("Generally, the defendant's mere maintenance of an Internet website is not sufficient activity to exercise general jurisdiction over the defendant.").

Turning to specific personal jurisdiction, the Court finds that, here as well, Plaintiffs' allegations and purported evidentiary basis fall short.  To be sure, this is not the first time the Court has been asked to assert specific personal jurisdiction in a trademark suit against a foreign defendant.  Lawsuits such as this one, alleging trademark or copyright infringement against foreign counterfeiters, are not uncommon in this District.  Such cases tend to proceed initially in a similar manner: the plaintiff files a complaint, seeks a TRO and provides the necessary support; and based upon that support the District Court grants the TRO.  In such cases, however, the plaintiff routinely makes a sufficient showing in support of the

TRO that each named defendant operates an interactive website that allows counterfeit goods to be sold in Illinois, and that each named defendant stands ready and able to ship its counterfeit goods to Illinois. In this case, such a showing is absent. At best, Plaintiffs' evidence shows that some defendants may have used copyrighted images; it does not show that each of the Defendants specifically offered for sale or sold infringing products to Illinois residents.

The Court initially entered the TRO based upon Plaintiffs' jurisdictional allegations, which represented that each Defendant transacts business in the State of Illinois and that each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiffs' intellectual property rights to consumers within the United States, including the State of Illinois. Amended Complaint [18], ¶¶11, 17. However, when communications from Defendants and counsel's representations in court suggested that those allegations may not have been well-founded with respect to every single one of the 3,343 defendants named in the suit, the Court asked Plaintiffs to go beyond the pleadings and submit affirmative evidence supporting this allegation and justifying the exercise of jurisdiction as to each named defendant. *See Monster Energy*, 136 F.Supp. 3d at 902 (jurisdictional allegations are accepted as true, but if a defendant submits evidence in opposition to the exercise of jurisdiction, plaintiff must go beyond the pleadings and submit affirmative evidence to support it) (citing *Purdue Research Foundation v. Sonofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003)). Plaintiffs did not provide

such evidence, and Plaintiffs' counsel indicated that he believed personal jurisdiction was proper as to all 3,343 defendants solely because they operated interactive websites that displayed copyrighted images and infringed Plaintiffs' trademarks. As explained below, however, that evidence alone does not establish the minimum contacts necessary to justify the exercise of specific personal jurisdiction here.

In *Walden v. Fiore*, the Supreme Court reiterated that, when assessing whether a given defendant has the "minimum contacts" necessary to create specific jurisdiction, the focus is upon "the relationship among the defendant, the forum, and the litigation." – U.S. –, 134 S.Ct. 1115, 1121 (2014). The Court emphasized two important aspects of this analysis: first, the relevant contacts are those "the 'defendant himself' creates with the forum state, *id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); and, second, when assessing personal jurisdiction, we look at the contacts with the state itself, not the contacts with persons who happen to reside here, *id.* (citing *International Shoe*, 326 U.S. at 319).

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* also instructs that the focus of the analysis does not change when the contacts and activities involve the Internet. 751 F.3d 796 (7th Cir. 2010). In that case, the Seventh Circuit addressed the impact of a defendant's online activities upon the personal jurisdiction analysis and reiterated that, as with offline activities, the Court must focus upon the deliberate actions of the defendant within the state. *Id.* at 803. The fact that customers might receive emails in the forum state, or might

15

access the website in the forum state, is not important; the question is whether the defendant "in some way targeted residents of a specific state" or otherwise "formed a contact with the forum state." *Id.* In other words, whether the defendants' activities are online or offline, the analysis is the same, and the Court must still focus on the defendants' contacts "aimed" at the forum state.

In this case, Plaintiffs took the position that, under *Monster Energy,* the maintenance of an interactive website is enough, by itself, to establish personal jurisdiction over every defendant named here. That interpretation reads *Monster Energy* too broadly. Indeed, under that logic, personal jurisdiction would automatically exist in every state (and presumably every country, even though *International Shoe* and its progeny would not apply outside the United States). In *Monster Energy*, the defendants argued that the maintenance of an interactive website alone *was not* enough to establish minimum contacts, and the plaintiff and the court agreed. 136 F.Supp.3d at 905. There, though, the evidence went beyond the maintenance of an interactive website, and also showed that the *defendants* had affirmatively selected a shipping option to ship counterfeit products to the United States, including to Illinois residents, *id.*; and the plaintiffs' exhibits showed that the named defendants had specifically offered to sell particular counterfeit products to individuals with Illinois shipping addresses. Based upon this evidence – and not just the existence of an interactive website – the court determined that the defendants had "expressly aimed" their actions at the state, making specific personal jurisdiction proper. In this case, however, Plaintiffs have not made such a

16

showing. They provided no facts to show that any of the defendants named in the complaint aimed any action at Illinois.

The case of *State of Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010) is also instructive. In *Hemi*, the state of Illinois sued a company based out of New Mexico that sold cigarettes via the Internet to Illinois residents in violation of state laws. Hemi was not a resident of Illinois, not incorporated in Illinois, not registered to do business in Illinois, it had no officers or employees in Illinois, did not bank in Illinois and did no advertising in Illinois. Because of these facts, Hemi moved to dismiss, arguing that exercising personal jurisdiction over it would offend due process. The district court disagreed and denied the motion. The Seventh Circuit affirmed, finding that Hemi's contacts with Illinois were sufficient to satisfy due process. *Hemi*, 622 F.3d at 757. Of particular significance to the court was the fact that "Hemi maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts." *Id.* at 757-58. What's more, the websites specifically stated that Hemi would ship to any state in the country except New York. The court found this statement crucial for two reasons. First, it demonstrated Hemi's affirmative election to do business with Illinois residents. Second, it demonstrated Hemi's knowledge that conducting business with residents of a particular state could subject it to jurisdiction there, and that it could protect itself from being dragged into court in any particular state by excluding that state from its shipping options. *Id.* at 758. The court noted that the jurisdictional case would have been stronger if

17

Hemi had listed all 49 states by name, but that the net result of the statement representing that Hemi would ship to all states except New York was the same – that is, "Hemi stood ready and willing to do business with Illinois residents." *Id.* at 758.

In keeping with precedent, the *Hemi* court was careful to note that it was not the activities of Hemi's *customers* that justified the exercise of personal jurisdiction, but the aimed activities of Hemi itself: creating the commercial, interactive websites, and then holding itself open to do business with every state except New York, including shipping cigarettes to Illinois residents. *Id.* at 758. It was Hemi "reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id.* Additionally, the court cautioned district courts to "be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Id.* at 760. The exercise of jurisdiction over Hemi was proper, not simply because Hemi operated an interactive website that could be accessed in Illinois (and in 48 other states), but because Hemi had sufficient voluntary contacts with, and aimed at, the state of Illinois. *Id.*

Although Plaintiffs initially alleged that "[e]ach Defendant targets the United States, including Illinois," amended complaint [18], ¶11, they could offer no facts to properly support that allegation, relying exclusively on the mere existence

of the interactive websites. Plaintiffs have not shown that the websites were any more accessible in Illinois than anywhere else in the world; they have not shown that any Illinois residents actually accessed the websites; they have not shown any injury occurring in Illinois; they have not shown that any Defendant took any action with respect to Illinois in particular. They have not alleged or shown that any of the Defendants specifically agreed to ship to Illinois or that they otherwise reached out to, or expressly aimed their activities at, this state or its residents. Quite simply, Plaintiffs failed to show that *any* Defendant had any voluntary contacts with the State of Illinois, yet they seek to drag all 3000-plus Defendants into this district here solely because of their websites – precisely what *Hemi* admonished courts to avoid.

The Court recognizes that piracy and counterfeiting by foreign defendants are legitimate concerns and serious problems in both a criminal and civil context. But the constitutional implications of dragging unwitting foreign defendants into court in Illinois are serious as well. Today, the Court simply reaffirms the lessons of *Walden, Advanced Tactical* and *Hemi,* as applied in *Monster Energy*: whether a defendant's activities are online or offline, the burden remains upon the plaintiff to do the preliminary investigation necessary to demonstrate that each defendant has reached out to, or expressly aimed its activities at, Illinois. In the context of cases like this one, that means a plaintiff must show that each defendant is actually operating an interactive website that is accessible in Illinois and that each defendant has aimed such site at Illinois by standing ready, willing and able to ship

19

its counterfeit goods *to customers in Illinois in particular* (or otherwise has some sufficient voluntary contacts with the state). The Court will, no doubt, see cases where the question of minimum contacts is close. This is not one of them. Without sufficient investigation, Plaintiffs cast an extremely wide net, naming 3,343 defendants who have no connection to this state, based upon the erroneous assumption that simply alleging the existence of purported counterfeiting via an interactive website is enough, by itself, to confer personal jurisdiction. It is not.

## Conclusion

For the reasons explained above and as stated in open court, the Court finds that Plaintiffs have failed to show that personal jurisdiction is proper here as to any of the 3,343 entities they sued. Lacking this prerequisite, Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims. Accordingly, Plaintiffs' motion for preliminary injunction [63] is denied. For the same reason, and pursuant to Plaintiffs' notice of voluntary dismissal, Plaintiffs' Amended Complaint [18] is dismissed, as noted in the Court's prior Order [75].

Dated: June 29, 2016

ENTERED:

_____
Judge John Robert Blakey
United States District Court